**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

TRIUM BANK & TRUST LIMITED　　　　　　Chapter 15
　　　　　　　　　　　　　　　　　　　　　　　Case No.:
　　　Debtor in a Foreign Proceeding.
_____/

**MOTION FOR ORDER OF RECOGNITION OF FOREIGN MAIN**
**PROCEEDING PURSUANT TO §§ 1515 AND 1517 AND REQUEST FOR HEARING**

　　　Robert J. Wilkinson, the receiver of the foreign bankruptcy estate ("Receiver" or "Foreign Representative"), moves this Court for entry of an Order recognizing the foreign bankruptcy proceeding ("Antiguan Proceeding") of Trium Bank & Trust Limited ("Trium" or "Debtor") pending before the Antiguan Financial Services Regulatory Commission ("FSRC"), as a foreign main proceeding under 11 U.S.C. § 1517,[1] granting related relief pursuant to §§ 1520 and 1521, and granting any additional relief which may be available under the Bankruptcy Code. The Foreign Representative further requests a hearing on the initial petition ("Petition") and this Motion no earlier than (21) days after the date the Court issues its notice of hearing but, in any event, "at the earliest possible time" thereafter. *See* Fed. R. Bankr. P. 2002(q); § 1517(c).

**PRELIMINARY STATEMENT, JURISDICTION, & VENUE**

　　　1. The Foreign Representative files the Petition and this Motion under § 1504 to seek recognition of the Antiguan Proceeding as a "foreign main proceeding," as defined in § 1502(4).

　　　2. The Petition and the Motion are supported by the Declaration under penalty of perjury of Robert J. Wilkinson ("Declaration") attached as **Exhibit 1**. The Declaration itself

---

[1] All statutory references shall be to Title 11 U.S.C. § 101 *et seq*. ("Bankruptcy Code"), unless otherwise specified.

contains exhibits referred to and incorporated herein.[2] The Declaration also provides a summary of the Antiguan Proceeding.

3. A true and correct copy of the appointment instrument dated February 12, 2020 appointing the Foreign Representative to administer the insolvency proceedings of the Debtor ("Appointment Instrument") is attached to the Declaration as **Exhibit 1(A)**. The Foreign Representative has served in this capacity continuously since accepting the appointment.

4. As required by Fed. R. Bankr. P. 1007(a)(4), a Statement of Corporate Ownership, in conformity with Fed. R. Bankr. P. 7007.1 is attached hereto as **Exhibit 2**.

5. Antigua is the center of main interests of the Debtor. Among other considerations: Antigua is the location of the Debtor's last principal place of business and registered operating address. Additionally, Trium was an Antiguan bank, governed by Antiguan law, and supervised by the Antiguan FSRC. Furthermore, it was reasonably ascertainable to Trium's customers and prominently displayed in the bank's materials during the relevant period that Trium was Antiguan. See Ex. 1 ¶ 7.

6. This Court has jurisdiction under 28 U.S.C. §§ 157 and 1334 and §§ 109 and 1501 of the Bankruptcy Code.

7. This is a core proceeding under 28 U.S.C. § 157(b)(2)(P).

8. Venue is proper in this district under 28 U.S.C. § 1410. The Foreign Representative has retained Sequor Law, P.A ("Sequor Law") in this district, and Sequor Law holds in its trust account in this District US$ 1,500 on behalf of and for the benefit of the Debtor, to which funds Sequor Law has no rights of setoff, charging lien, or similar right. See Ex. 1 ¶ 23.

---

[2] Exhibit "A" of the Declaration is referenced herein as Exhibit "1(A)" and so on.

**SUMMARY OF FACTUAL BACKGROUND**

9. Trium operated in Antigua from March 3, 2006 through April 2018. Its banking license renewed automatically ever year, provided that Trium submitted the required financial reports and paid the required fees to the FSRC. Trium began to experience operational difficulties around 2017 due to de-risking by corresponding banks in the US and elsewhere. Trium also began to face legal challenges in Antigua and Barbuda by its customers and became unable to pay its third-party vendors. Following eviction from its office space, Trium lost its banking license and was placed into involuntary liquidation and receivership proceedings in February 2020.

**Factual Background**

10. On or about August 19, 2005, Trium Bank Ltd. submitted to the FSRC an application for a license to carry out international banking business under Section 228 of the Antiguan International Business Corporations Act. Trium's banking license application was granted by the FSRC for the period from March 3, 2006 to March 3, 2007, and was submitted to the FSRC for annual renewal. On June 11, 2010, Trium Bank Ltd. was advised of the FSRC's approval of a license that would allow it to provide trust services to its clients in addition to international banking services. As a result, the bank amended its name to Trium Bank & Trust Ltd. Ex. 1 ¶ 6.

11. Trium operated in Antigua from March 3, 2006 through April 2018. Its registered agent of record was located in Antigua from its inception. Its last registered agent of record was Company Management (Antigua) Limited, Unit No. 9, Gambles Medical Centre, Box 2372 Friars Hill Road, St. John's, Antigua.[3] Likewise, Trium's registered operating address was always located in Antigua, the most recent one at address Building #2 Suites 21B & 22, Jasmine Court,

---

[3] Company Management (Antigua) Limited was Trium's registered agent from September 18, 2012 through April 2018.

Friars Hill Road, St. John's, Antigua. At all times material, Trium's principal office offering banking and trust services was located in Antigua and Barbuda. Trium also maintained a customer service agency office in Caracas, Venezuela. Upon information and belief, it was clear to customers who visited the customer service agency office in Venezuela that they were dealing with an Antiguan bank.[4] The fact that Trium was an Antiguan bank, governed by Antiguan law, and supervised by an Antiguan regulatory agency is believed to have been one of the primary characteristics attracting Trium's customers to the bank and were facts that were reasonably ascertainable and prominently displayed in the bank's materials during the relevant period. Id. at ¶ 7.

12. Trium's banking license application states that funding would be sustained through client deposits. The number of Trium customers ranged from 150 to 200 and the number of accounts ranged from 185 to 300. At the date of the Receiver's appointment, there were 289 listed accounts, of which 164 had a positive balance as of December 31, 2017. Id. at ¶ 8.

13. Trium offered a variety of corporate and personal retail banking products including demand deposit accounts, savings accounts, money market accounts, certificates of deposit, investment and private banking, credit and debit cards, and more. Trium also offered loans, although this was not as significant an element of Trium's business, and certainly not in its latter years of operation. Id. at ¶ 9.

**Commencement of the Antiguan Proceeding and Appointment of the Receiver**

14. Prior to the expiration of Trium's international banking and trust license for the 2017-2018 period, Trium was experiencing operating challenges due to de-risking by

---

[4] Based upon information and records reviewed to date, there is no indication that Trium ever sought or had a Venezuelan banking license.

correspondent banks in the US and elsewhere. Trium eventually lost its correspondent banking services, and all efforts to establish new correspondent banking relationships with other entities in various jurisdictions were unsuccessful. As a result, customer withdrawal requests became impossible to honor. Id. at ¶ 10.

15. Trium ceased trading around approximately September 2017 for various reasons, including the loss of correspondent banking services. Id. at ¶ 11.

16. Trium also faced legal challenges in Antigua and Barbuda from its customers who experienced difficulties in trying to withdraw or access their deposit balances. Id. at ¶ 12.

17. Additionally, Trium ceased to submit the required quarterly returns to the FSRC at the end of November 2017. On September 23, 2019, Trium's external auditor, KPMG Eastern Caribbean, advised the FSRC that it had been unable to complete certain verifications that would facilitate the preparation of the bank's 2016 financial statements. The lack of cooperation between Trium and its external auditor is apparent from documents reviewed to date. At that point, the FSRC was uncertain as to the custody and existence of Trium's assets. Id. at ¶ 13.

18. Trium's license expired on March 2, 2018 and was not renewed because Trium failed to meet the renewal requirements, such as the payment of the relevant fee and the submission of its quarterly returns to the FSRC. Because Trium's shareholders never resolved to voluntarily wind up the bank's affairs, Trium continued to hold depositors' funds without a license. Trium also failed to meet its operational obligations, including payment of employee salaries, office space rent payment, the retention of external auditing services, and payment to the bank's other creditors. Trium was eventually evicted from its office in Antigua in May 2019 for nonpayment of rent, which violated the requirement for international banking license holders to maintain a physical presence in Antigua and Barbuda. Also, Trium's detailed ledgers were maintained by a third-party

service provider who suspended the processing of the bank's transactions on December 28, 2017 due to lack of payment. Id. at ¶ 14.

19. As a result, on February 12, 2020, the FSRC placed Trium into involuntary receivership and involuntary liquidation proceedings under the Antiguan International Banking Act 2016 (as amended), and, specifically, Section 137(k), because Trium was carrying on banking business without a license. As described previously, the FSRC appointed a Receiver for Trium. See Ex. 1(A); Ex. 1 ¶ 15.

20. The Receiver has been charged with the task of identifying and recovering assets to wind up its affairs and enable its debts to be paid. Ex. 1(A) at 3. The Receiver been specifically charged with securing Trium's "properties, assets, books and records" to carry out this purpose. Id.; see also Ex. 1 ¶ 16.

21. Antiguan law required that public notice of Trium's receivership and involuntary liquidation proceedings be given. By the time of the Receiver's appointment, Trium had no functioning office in Antigua, or elsewhere, at which to post the statutory notice of the proceedings. On February 17 and 18, 2020, the local press in Antigua and Barbuda published notices announcing the revocation of Trium's banking license and my appointment by the FSRC. On July 23, 2020, the notices were also published in the *Gazette*, which is published by the Ministry of Legal Affairs in Antigua and Barbuda. The notices provide details for depositors and other creditors and stakeholders to present their claims against Trium. Ex. 1 ¶ 17.

22. Trium's directors, officers, and agents are required to "give every assistance to the Receiver including the supply of information or explanation in any form as may be required of relevant matters…." Ex. 1(A) at 3. Accordingly, the Receiver has set out to interview Trium's

agent Fernando Lauria,[5] and its former Director and President Carlos Diaz. Mr. Lauria participated in an interview, but, as detailed in ¶ 23, *infra*, he has refused to cooperate further with the investigation of Trium's affairs. Mr. Diaz has been somewhat cooperative but at all times has stressed his alleged disassociation from Trium in January 2017. Ex. 1 ¶ 18.

23. On February 17, 2020, the Receiver sent a letter to Mr. Lauria, containing an initial information request relating to Trium's operations. Mr. Lauria did not respond to the information request by the deadline so, on March 23, 2020, the Receiver sent him another demand for information. Mr. Lauria then contacted the Receiver directly making excuses for the lack of response to date and promising efforts to provide the requested information. To date, Mr. Lauria has not provided any of the requested documents and information. Id. at ¶ 19.

24. Due to the lack of cooperation from Trium's current directors, officers, and agents, the Receiver has been unable to obtain key information to establish Trium's true financial position, nor has the Receiver been able to ensure a full listing of creditors. Id. at ¶ 20.

## FOREIGN REPRESENTATIVE'S WORLDWIDE INVESTIGATION AND DEBTOR'S US PROPERTY

25. The Foreign Representative has been charged to investigate the Debtor's business, affairs, and dealings, both in Antigua and worldwide.

26. The instant Petition and Motion for recognition of the Antiguan Proceeding in the United States are of critical importance to the Foreign Representative's worldwide pursuit of assets with which to satisfy unpaid claims as well as to investigate, identify, and marshal the Debtor's assets in the United States. The Receiver seeks recognition of the Antiguan Proceeding in the United States and of himself as Foreign Representative in furtherance of the investigation into the

---

[5] Mr. Lauria is the Principal of GF Consulting International Inc., which served as Trium's "consultant" allegedly providing general management, representative, and paying agent services.

affairs of the Debtor, as well as to potentially marshal assets of the Debtor as may be located in the United States.

## RECOGNITION IS APPROPRIATE

27. The Foreign Representative has satisfied each of the requirements for recognition of the Antiguan Proceeding under Chapter 15 of the Bankruptcy Code, as follows:

(a) The Foreign Representative qualifies as a "foreign representative" as defined in 11 U.S.C. §101(24) because he is an individual authorized in the Antiguan Proceeding to administer the liquidation of the Debtor's assets and affairs, and to act as a representative of the Antiguan Proceeding.

(b) The Antiguan Proceeding is a "foreign main proceeding" as defined in 11 U.S.C. § 101(23) and 1502(4), because it is (i) pending in Antigua, which is the Debtor's center of main interests; and (ii) a collective administrative and judicial proceeding under a law relating to insolvency or adjustment of debt in which proceeding the Debtor's assets and affairs are subject to the control or supervision of the FSRC for the purpose of liquidation. Additionally, the Antiguan courts have the ability to resolve controversies and disputes as may result from the Receivership.[6]

(c) The Debtor meets the requirements of a "debtor" as defined in sections 109(a), if applicable, and 1502 because the Debtor is the subject of a foreign proceeding and has assets in the United States, including a retainer on deposit with Sequor Law and property of the Debtor in trust in the amount of US $1,500.

---

[6] Both the Foreign Representative and Trium's creditors can appeal decisions made by the FSRC to the Antiguan courts. Ex. 1 ¶ 25.

(d) This Motion is accompanied by the Appointment Instrument of the FSRC, dated February 12, 2020, appointing the Foreign Representative as the receiver in the liquidation proceedings relating to the Debtor.

(e) Additionally, the Declaration contains the list of all foreign proceedings, persons, or entities that must be identified pursuant to 11 U.S.C. § 1515 and Fed. R. Bankr. P. 1007. Ex. 1 ¶¶ 29-31.

28. Upon recognition of a foreign proceeding and at the request of a foreign representative, the Court may grant (with certain express exceptions not applicable here) "any appropriate relief," including any injunctive relief, and "any additional relief that may be available to a trustee," that is necessary to effectuate the purpose of Chapter 15 and to protect the debtor's assets or the creditors' interests. 11 U.S.C. § 1521(a). Further, Section 1521(b) provides that "[u]pon recognition of a foreign proceeding, whether main or nonmain, the court may, at the request of the foreign representative, entrust the distribution of all or part of the debtor's assets located in the United States to the foreign representative . . . provided that the court is satisfied that the interests of creditors in the United States are sufficiently protected." 11 U.S.C. § 1521(b).

## RELIEF REQUESTED

29. The Foreign Representative seeks an Order pursuant to §§ 105(a), 1507, 1517, 1520, and 1521 of the Bankruptcy Code, substantially in the form of the Proposed Order, attached as **Exhibit 3** hereto, granting the following relief:

(a) Recognizing the Antiguan Proceeding as a foreign main proceeding and the Receiver as the duly authorized Foreign Representative of the Debtor;

(b) Granting the relief allowable as of right upon recognition of a foreign main proceeding under § 1520 of the Bankruptcy Code;

(c) Granting all available and appropriate relief under § 1521 of the Bankruptcy Code, including:

    (1) staying the commencement or continuation of any action or proceeding concerning rights, obligations or liabilities of the Debtor and the Debtor's bankruptcy estate, to the extent not stayed under § 1520(a) of the Bankruptcy Code;

    (2) staying execution against the Debtor's assets, to the extent not stayed under § 1520(a);

    (3) suspending the right to transfer or otherwise dispose of any assets of the Debtor to the extent this right has not been suspended under § 1520(a);

    (4) providing for the examination of witnesses, the taking of evidence, and the delivery of information concerning the assets, affairs, rights, obligations, or liability of the Debtor or the Debtor's estate under § 1521(a)(4), the Federal Rules of Bankruptcy Procedure, including Fed. R. Bankr. P. 2004, and Local Rule 2004-1;

    (5) entrusting the administration or realization of all of the Debtor's assets within the territorial jurisdiction of the United States to the Foreign Representative;

    (6) entrusting the distribution of all or part of the Debtor's assets located within the United States to the Foreign Representative and finding that the interests of the creditors in the United States are sufficiently protected thereby;

    (7) otherwise granting comity to and giving full force and effect to the orders and documents attached to this Motion; and

Case 20-19637    Doc 2    Filed 09/02/20    Page 11 of 11

(8) granting the Foreign Representative such other and further relief as this Court may deem just and proper.

## CONCLUSION

WHEREFORE, the Foreign Representative respectfully requests that this Court enter an Order substantially in the form of the Proposed Order attached as **Exhibit 3** and grant such other relief as may be just and proper.

Dated: September 2, 2020

Respectfully submitted,

**SEQUOR LAW, P.A.**
1111 Brickell Avenue, Suite 1250
Miami, Florida 33131
Telephone: (305) 372-8282
Facsimile: (305) 372-8202
Email: alacayo@sequorlaw.com
cgoncalves@sequorlaw.com

By: */s/ Arnoldo B. Lacayo*
Arnoldo B. Lacayo
Fla. Bar No. 675482
Carolina Zambrano Goncalves
Fla. Bar No. 124570

Page **11** of **11**